# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

BANCENTRE CORP., a Washington
corporation,

                Plaintiff,

v.

ATLANTIC MANAGEMENT
CORPORATION, an Oklahoma
corporation, *et al*.

             Defendants.

Case No. CIV-13-604-D

## <u>JUDGMENT</u>

By Order entered on March 11, 2014 [Doc. No. 47], the Court granted Plaintiff's

Motion for Summary Judgment on all claims against all parties. In accordance therewith, the

Court hereby enters judgment for Plaintiff as hereafter set forth, as required by Fed. R. Civ.

P. 58(a). All findings and conclusions in the Court's Order are incorporated herein by

reference. The Court further FINDS AND ORDERS AS FOLLOWS:

1.      The citizenship of Plaintiff is diverse from the citizenship of all Defendants,

and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

2.      All Defendants reside or may be found within this judicial district, and the real

property that is the subject of Plaintiff's foreclosure action is located in Cleveland County,

Oklahoma, within this judicial district. The events giving rise to Plaintiff's claims for relief

occurred within this judicial district. Venue is therefore proper pursuant to 28 U.S.C. § 1391,

and no party has objected to such venue.

3.     Each of Defendants has been personally served with Summons and Plaintiff's Complaint, or has otherwise entered an appearance.  By virtue of such service, and/or the voluntary appearance of Defendants herein, the Court has personal jurisdiction over all of the parties to grant the relief requested by Plaintiff, and no party has objected to personal jurisdiction.

4.     On December 8, 2009, Defendant Atlantic Management Corporation ("AMC") executed and delivered to Plaintiff a promissory note in the original face amount of $2,505,000, which provided for interest as stated therein, required monthly installment payments to be made beginning on a date certain, matured on a date certain, and was secured by real estate mortgages, as hereafter set forth, and the personal guaranties of Defendants Wayne Copeland and Karen Copeland, as hereafter set forth.  AMC has defaulted on the note and failed to cure such default, and therefore, Plaintiff is entitled to an *in personam* judgment against AMC for all amounts due thereunder.  AMC owes Plaintiff under this note the principal amount of $2,850,693.61, plus accrued interest through October 31, 2013, of $528,497.58, and interest thereafter, beginning on November 1, 2013, at the *per diem* rate of $1,167.72.

5.     On April 28, 2010, AMC executed and delivered to Plaintiff a promissory note in the original face amount of $350,000, which provided for interest as stated therein, required monthly installment payments to be made on a date certain, matured on a date certain, and was secured by real estate mortgages, as hereafter set forth, and the personal guaranties of Defendants Wayne Copeland. and Karen Copeland, as hereafter set forth.

AMC has defaulted on the note and failed to cure such default, and therefore, Plaintiff is entitled to an *in personam* judgment against AMC for all amounts due thereunder. AMC owes Plaintiff under this note the principal amount of $501,675.44, plus accrued interest through October 31, 2013, of $93,581.24, and interest thereafter, beginning on November 1, 2013, at the *per diem* rate of $206.16.

6. On August 17, 2010, AMC executed and delivered to Plaintiff a promissory note in the original face amount of $500,000, which provided for interest as stated therein, required monthly installment payments to be made on a date certain, matured on a date certain, and was secured by real estate mortgages, as hereafter set forth, and the personal guaranties of Defendants Wayne Copeland and Karen Copeland, as hereafter set forth. AMC has defaulted on the note and failed to cure such default, and therefore Plaintiff is entitled to an *in personam* judgment against AMC for all amounts due thereunder. AMC owes Plaintiff under this note the principal amount of $632,645.29, plus accrued interest through October 31, 2013, of $118,016.68, and interest thereafter, beginning on November 1, 2013, at the *per diem* rate of $259.99.

7. On November 7, 2011, AMC executed and delivered to Plaintiff a promissory note in the original face amount of $1,200,000, which provided for interest as stated therein, required monthly installment payments to be made on a date certain, matured on a date certain, and was secured by real estate mortgages, as hereafter set forth, and the personal guaranties of Defendants Wayne Copeland and Karen Copeland, as hereafter set forth. AMC has defaulted on the note and failed to cure such default, and therefore, Plaintiff is entitled

to an *in personam* judgment against AMC for all amounts due thereunder. AMC owes Plaintiff under this Note the principal amount of $1,134,738.31, plus accrued interest through October 31, 2013, of $210,897.40, and interest thereafter, beginning on November 1, 2013, at the *per diem* rate of $466.33.

8. To secure the payment of each of the notes referenced above, and all other liabilities and obligations owed by AMC to Plaintiff, contemporaneously with the execution of the notes and/or upon subsequent advancements made under each of the notes, for good and valuable consideration, AMC executed various mortgages. Each of the mortgages was signed, attested, and acknowledged according to law, duly recorded with the Cleveland County Clerk, and covered the following real property:

(a) mortgage dated December 8, 2009, recorded December 9, 2009, at Bk. 4696, Pg. 777 *et seq.*; mortgage dated October 28, 2011, recorded October 28, 2011, at Bk. 4928, Pg. 257 *et seq.*; and mortgage dated May 18, 2012, recorded May 18, 2012, at Bk. 5005, Pg. 1433 *et seq.*, each of which mortgages covered the real property described as **"Tract 1"** on **Exhibit A** attached hereto;

(b) mortgage dated October 2, 2009, recorded October 5, 2009, at Bk. 4673, Pg. 1136 *et seq.*; mortgage dated April 28, 2010, recorded May 11, 2010, at Bk. 4743, Pg. 243 *et seq.*; and mortgage dated December 15, 2010, recorded January 10, 2011, at Bk. 4829, Pg. 1046 *et seq.*, each of which mortgages covered the real property described as **"Tract 2"** on **Exhibit A** attached hereto; and

(c)     mortgage dated August 17, 2010, recorded August 18, 2010, at Bk. 4776, Pg. 1187 *et seq*.; and mortgage dated December 15, 2010, recorded January 10, 2011, at Bk. 4829, Pg. 1090 *et seq*., each of which mortgages covered the real property described as **"Tract 3"** on **Exhibit A** attached hereto.  (The mortgages described on Exhibit A are collectively referred to hereafter as the "Property.")

9.     As a result of AMC's default on its indebtedness owed to Plaintiff, Plaintiff is entitled to an *in rem* judgment foreclosing all of its mortgages set forth above, including all improvements, fixtures and personal property situated thereon or affixed thereto, as more specifically ordered below.

10.     On June 2, 2011, Defendant 5 Crown Funding, LLC ("Crown") executed and delivered to Plaintiff a promissory note in the original face amount of $500,000, which provided for interest as stated therein, required monthly installment payments to be made on a date certain, matured on a date certain, and was secured by a security agreement, as hereafter set forth, and the personal guaranties of Defendants Wayne Copeland and Karen Copeland, as hereafter set forth.  Crown has defaulted on the note and failed to cure such default, and therefore, Plaintiff is entitled to an *in personam* judgment against Crown for all amounts due thereunder.  Crown owes Plaintiff under this note the principal amount of $231,411.06, plus accrued interest through October 31, 2013, of $43,171.69, and interest thereafter, beginning on November 1, 2013, at the *per diem* rate of $95.10.

11.     To secure the payment of the note from Crown, Crown contemporaneously executed and delivered to Plaintiff a security agreement granting Plaintiff a security interest

in collateral consisting generally of restaurant furniture, fixtures and equipment installed or located on the property, more specifically described on **Exhibit B** attached hereto ("Collateral"). The security agreement was properly executed and perfected in accordance with law by filing with the Cleveland County Clerk. The Collateral was not taken in execution on any order or judgment, or for the payment of any tax, fine or amercement assessed against Plaintiff or pursuant to any other process issued against Plaintiff.

12.     As a result of Crown's default on its note to Plaintiff, Crown has breached the conditions of its security agreement, and therefore Plaintiff is entitled to an *in rem* judgment foreclosing its security interest against the Collateral, and authorizing Plaintiff to take possession thereof and sell it as authorized by law, as more specifically ordered below.

13.     By filing made on October 8, 2013 [Doc. No. 36], the Clerk has entered default against Defendants Blanchard Building Center, Inc. and Guenevere, Inc. for failure to appear, plead or otherwise defend in this action. Plaintiff is therefore entitled to an *in rem* judgment against each of these Defendants to the extent that either of them has or may claim any right, title, lien or interest in the Property. The Court hereby adopts and incorporates that Order by reference, and confirms that whatever claim, right, title, lien or interest either of these parties may have or assert in the Property is subordinate to Plaintiff's mortgages. If any proceeds from the sale of the Property, as hereafter ordered, remain after satisfaction of all debts and amounts owed to Plaintiff, or any other party with a prior interest in the Property as found herein, such proceeds shall remain with the Court to be subject to any claim that either of these parties may then prove upon proper notice and hearing.

14.     Defendants G.O.P.H., LLC, Billy E. Fowler, Forge Realty, LLC and Professional Properties of Norman, Inc. each claim or may claim some right, title, claim or interest in the Property, or some part thereof, pursuant to mortgages granted to these parties, or their assignors, by AMC.  Pursuant to multiple subordination agreements executed by each of these Defendants, which were acknowledged according to law and filed with the Cleveland County Clerk, each of these Defendants agreed to subordinate its mortgages to the mortgages AMC granted the Plaintiff.  Each of the subordination agreements is valid and enforceable in all respects.  As a result, Plaintiff's eight mortgages on the Property are all entitled to priority over whatever mortgage interest is claimed by each of the subordinating Defendants.  If any proceeds from the sale of the Property, as hereafter ordered, remain after satisfaction of all debts and amounts owed to Plaintiff, or any other party with a prior interest in the Property, such proceeds shall remain with the Court and be subject to any claim that any of these subordinating Defendants may then prove upon proper notice and hearing.

15.     Defendants William's Automatic Sprinkler, LLC, Samuel Ray Adams (individually or as agent for Superior Stainless, Inc.), and THJ Realty, LLC claim or may claim some right, title, lien or interest in the Property by virtue of materialman's lien claims or assignment of a judgment lien.  Any such lien claims are subordinate to Plaintiff's mortgages.  If any proceeds from the sale of the Property, as hereafter ordered, remain after satisfaction of all debts and amounts owed to Plaintiff, or any other party with a prior interest in the Property as found herein, such proceeds shall remain with the Court and be subject to any claim that any of these parties may then prove upon proper notice and hearing.

16.     Defendants County Treasurer and Board of County Commissioners for Cleveland County, Oklahoma, claim or may claim some right, title, claim, lien or interest in the Property for unpaid *ad valorem* taxes assessed against the Property.  To the extent  any such real estate taxes are due and payable as of the time of the confirmation of the sale of the Property, as ordered below, such outstanding taxes shall constitute a first and prior lien against the Property, superior to Plaintiff's mortgages, and shall be paid from the proceeds of the sale, as provided below.

17.     Defendants Wayne Copeland and Karen Copeland each individually executed, on multiple dates, separate continuing guaranty agreements in favor of Plaintiff guaranteeing all amounts owed by AMC and/or Crown.  Each of the guaranty agreements was supported by contemporaneous and adequate consideration, and is otherwise valid and enforceable against each of these Defendants.  As a result, Plaintiff is entitled to an *in personam* judgment against Defendants Wayne Copeland and Karen Copeland, jointly and severally, for the full amount owed by AMC and Crown, as hereafter ordered.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiff have judgment, *in personam*, against Atlantic Management Corporation on all of Plaintiff's notes, in the total principal amount of $5,119,752.65, plus interest accrued thereon through October 31, 2013 of $950,934.26, and thereafter accruing, beginning November 1, 2013, at the *per diem* rate of $2,100.20 until the date of entry of this judgment, plus any other costs and expenses allowed in the notes and mortgages, or as allowed by law, including in particular any amounts paid by Plaintiff for insurance, taxes and utilities on the Property not included

8

in principal amount stated above, and which accrue on or before the date of confirmation of the sale of the Property, as hereafter ordered, and post-judgment interest as provided by law.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff have judgment, *in personam*, against 5 Crown Funding, LLC on Crown's Note, in the total principal amount of $231,411.06, plus interest accrued thereon through October 31, 2013 of $43,171.69, and interest accruing thereafter, beginning November 1, 2013, at the *per diem* rate of $95.10, until the date of entry of this judgment, plus any other costs and expenses allowed in the notes and security agreements, or as allowed by law, including in particular any amounts paid by Plaintiff for insurance, taxes and preservation of the Collateral, not included in principal amount stated above, and which accrue on or before the date of confirmation of the sale of the Collateral, and post-judgment interest as provided by law.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff's security interest in the Collateral pledged by 5 Crown Funding, LLC, as described on **Exhibit B** attached hereto, is a valid and prior lien against the Collateral, as against Crown's right, title, claim or interest therein, and that such security interest is hereby ordered foreclosed. 5 Crown Funding, LLC is ordered to deliver immediate possession of the Collateral to the Plaintiff, pursuant to which Plaintiff may proceed to sell or dispose of such Collateral as allowed by law. Subject to any claim and priority that any other party may establish in the Collateral, the proceeds from the sale or other disposition of the Collateral shall be applied to the satisfaction of all debts and amounts owed to Plaintiff by Crown, including the costs and expenses of such sale.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff have judgment, *in personam*, jointly and severely, against Wayne E. Copeland, Jr. and Karen L. Copeland for all amounts owed by Atlantic Management Corporation and 5 Crown Funding, LLC, as adjudged above, and post-judgment interest as provided by law.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff is entitled to an *in personam* money judgment against Atlantic Management Corporation, 5 Crown Funding, LLC, Wayne E. Copeland, Jr. and Karen L. Copeland for a reasonable attorneys' fee incurred in connection with this case and as allowed pursuant to the notes, mortgages, security agreements, guaranty agreements and/or by law, subject to proper and timely motion by Plaintiff to establish the amount, reasonableness and necessity thereof.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff's mortgages against the Properties are hereby foreclosed, and such Properties, described on **Exhibit A** attached hereto, together with all improvements located thereon, are hereby ordered to be sold, collectively, or in separate tracts as Plaintiff may elect, to satisfy Plaintiff's judgment herein and all amounts adjudicated and owed under this judgment, including any subsequent judgment for attorneys' fees and costs which may be hereafter ordered by the Court pursuant to proper motion and order. At the request of Plaintiff, a special execution and order of sale and foreclosure shall be issued demanding the appropriate officer or authority to levy upon the Property and, after having the Property appraised as

provided by law, which Plaintiff has expressly elected, to proceed to advertise and sell the Property as provided by law.  The proceeds of such sale shall be applied as follows:

First, to the payment of the costs of the sale and costs of this action;

Second, to the payment of any real estate taxes owed on the Property as of the time of the sale;

Third, to the payment of Plaintiff's *in personam* judgments awarded above;

Fourth, to the payment of Plaintiff's attorneys' fees and expenses, when awarded by the Court pursuant to proper motion, and any court costs and other costs of this action as authorized by law; and

Fifth, the residue of such sale proceeds, if any, shall remain with the Court to await further order and distribution to any other parties claiming and proving a right, title, claim or interest which is subordinate to Plaintiff.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that after the sale of the Property and Collateral, upon confirmation thereof by this Court or another court of competent jurisdiction, all Defendants shall be forever barred and foreclosed from asserting any right, title, claim or interest, *in rem*, against the Collateral and the Property, and any and all improvements located thereon, superior to Plaintiff's interest as adjudicated herein, including asserting any equity of redemption allowed by law, provided, however, this provision shall not bar any claims, *in personam*, that any such parties may have against

Atlantic Management Corporation, 5 Crown Funding, LLC, Wayne E. Copeland, Jr. and/or

Karen L. Copeland.

IT IS SO ORDERED this 9th day of April, 2014.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

# EXHIBIT 'A'

**Tract 1**

All of Lot Three A (3A) and a part of Lot Five A (5A), in Block One (1), of MXD ADDITION SECTION 2, and a part of Lot Two (2), in Block One (1), of STRAWBERRY LAKE SECTION FOUR, to Norman, Cleveland County, Oklahoma, according to the recorded plats thereof, and being more particularly described by Metes and Bounds as follows:

BEGINNING at the Northeast corner of Lot 3, Block 1, MXD ADDITION SECTION 2, same as being the Northeast corner of Lot 2, Block 1, STRAWBERRY LAKE SECTION FOUR;

Thence Southeasterly along the Westerly Right-of-Way line of Ed Noble Parkway and along a curve to the right, said curve having a radius of 767.50 feet, a chord distance of 172.55 feet, a chord bearing of South 30°12'50" East for an arc distance of 172.92 feet;

Thence Southeasterly along said Right-of-Way and along a curve to the right, said curve having a radius of 1147.50 feet, a chord distance of 3.67 feet, a chord bearing of South 23°40'11" East for an arc distance of 3.67 feet;

Thence South 80°26'08" West a distance of 22.00 feet;

Thence North 09°33'52" West a distance of 16.33 feet;

Thence South 78°31'15" West a distance of 66.46 feet;

Thence South 11°28'45" East a distance of 25.00 feet;

Thence South 78°31'15" West a distance of 21.50 feet;

Thence South 11°28'45" East a distance of 3.00 feet;

Thence South 78°31'15" West a distance of 17.00 feet;

Thence South 11°28'45" East a distance of 35.00 feet;

Thence South 78°31'15" West a distance of 8.00 feet;

Thence South 11°11'36" East a distance of 57.54 feet;

Thence South 77°11'39" West a distance of 21.20 feet;

Thence South 12°48'21" East a distance of 10.43 feet to a non-tangent point of curvature;

Thence Southwesterly along a curve to the right, said curve having a radius of 1226.88 feet, a chord distance of 103.70 feet, a chord bearing of South 76°42'15" West for an arc distance of 103.73 feet;

Thence South 12°48'21" East a distance of 169.36 feet;

Thence South 77°11'39" West a distance of 45.00 feet;

Thence South 12°48'21" East a distance of 26.59 feet;

Thence South 12°14'42" West a distance of 6.82 feet;

Thence North 90°00'00" West a distance of 19.58 feet;

Thence South 00°00'00" East a distance of 90.59 feet;

Thence South 79°55'03" East a distance of 8.50 feet;

Thence South 10°04'57" West a distance of 36.00 feet;

Thence North 79°55'03" West a distance of 40.69 feet;

Thence North 00°00'00" West a distance of 114.84 feet to a point of curvature;

Thence Northwesterly along a curve to the left, said curve having a radius of 131.62 feet, a chord distance of 29.36 feet, a chord bearing of North 06°24'11" West for an arc distance of 29.42 feet;

Thence North 12°48'21" West a distance of 135.87 feet;

Thence South 77°11'59" West a distance of 24.68 feet;

Thence North 63°34'09" West a distance of 20.79 feet;

Thence North 20°55'41" East a distance of 36.20 feet;

Thence North 65°14'28" West a distance of 29.95 feet;

Thence North 24°45'32" East a distance of 150.48 feet;

Thence North 38°14'28" West a distance of 14.69 feet to a non-tangent point of curvature;

Thence Northeasterly along a curve to the right, said curve having a radius of 1249.70 feet, a chord distance of 203.14 feet, a chord bearing of North 51°59'20" East for an arc distance of 203.36 feet;

Thence South 38°14'28" East a distance of 11.02 feet;

Thence North 14°07'04" West a distance of 16.44 feet;

Thence North 03°11'57" West a distance of 73.70 feet;

Thence North 47°27'10" East a distance of 40.00 feet to a point on a curve on the Southwesterly Right-of-Way line of Ed Noble Parkway;

Thence Southeasterly along said Right-of-Way and along a curve to the right, said curve having a radius of 767.50 feet, a chord distance of 78.37 feet, a chord bearing of South 39°37'15" East for an arc distance of 78.40 feet to the place or Point of Beginning.

N/K/A Lot Three B (3B), in Block One (1) of MXD ADDITION SECTION 2, to the City of Norman, located in the North Half (N/2) of Section 35, Township 9 North, Range 3 West, I.M., Cleveland County, Oklahoma, according to the Lot Line Adjustment filed in Book 4293, Page 109 and the Refiled Lot Line Adjustment filed in Book 4294, Page 93 in the records of the Cleveland County Clerk.

**AND**

**Tract 2**

A part of Lot Five A (5A), in Block One (1), of MXD ADDITION SECTION 2, to Norman, Cleveland County, Oklahoma, according to the recorded plat thereof, being more particularly described by metes and bounds as follows:

Commencing at the Northeast corner of Lot 3, Block 1, MXD Addition Section 2, same being the Northeast corner of Lot 2, Block 1, Strawberry Lake Section Four;

Thence South 51°45'32" West along the common boundary line between said MXD Addition Section 2 and Strawberry Lake Section Four a distance of 288.42 feet;

Thence South 24°45'32" West along said common boundary line a distance of 156.77 feet to the place of beginning;

Thence South 65°14'28" East a distance of 29.95 feet;

Thence South 20°55'41" West a distance of 36.20 feet;

Thence South 63°34'09" East a distance of 20.79 feet;

Thence North 77°11'59" East a distance of 24.68 feet;

Thence South 12°48'21" East a distance of 135.87 feet to a point of curvature;

Thence Southeasterly along a curve to the right, said curve having a radius 131.62 feet, a chord distance of 29.36 feet, a chord bearing of South 06°24'11" East for an arc distance of 29.42 feet;

Thence South 00°00'00" East a distance of 114.84 feet;

Thence South 79°55'03" East a distance of 67.15 feet;

Thence South 90°00'00" East a distance of 53.84 feet;

Thence South 00°00'00" East a distance of 19.00 feet;

Thence South 90°00'00" East a distance of 89.02 feet to a point on non-concentric Right-of-Way curve of William Pereira Drive;

Thence Southwesterly along said Right-of-Way and along a non-concentric curve to the left having a chord distance of 41.40 feet, a chord bearing of South 15°43'04" West for an arc distance of 41.72 feet to the Northeast corner of Lot 6, Block 1, MXD Addition Section 2;

Thence North 69°25'36" West along the North line of said Lot 6 a distance of 134.08 feet;

Thence North 79°55'03" West along said North line of Lot 6 a distance of 303.90 feet to the common Northwest corner of said Lot 6 and the Southwest corner of Lot 5, Block 1, MXD Addition Section 2;

Thence North 24°45'32" East along the West line of said Block 1, MXD Addition Section 2, a distance of 326.88 feet to the place or point of beginning.

**AND**

Tract 3

A part of Lot Two (2), in Block One (1), of STRAWBERRY LAKE SECTION FOUR, to Norman, Cleveland County, Oklahoma, according to the recorded plat thereof, being more particularly described by metes and bounds as follows:

Commencing at the Northeast Corner of Lot 2, Block 1, Strawberry Lake Addition Section Four;

Thence Northwesterly along the Southwesterly Right-of-Way line of Ed Noble Parkway and along a curve to the left, said curve having a radius of 767.50 feet, a chord distance of 78.37 feet, a chord bearing of North 39°37'15" West for an arc distance of 78.40 feet to the place or point of beginning;

Thence South 47°27'10" West a distance of 40.00 feet;

Thence South 03°11'57" East a distance of 73.70 feet;

Thence South 14°07'04" East a distance of 16.44 feet to a point on the East line of said Lot 2;

Thence North 38°14'28" West a distance of 11.02 feet to a non-tangent point of curvature;

Thence Southwesterly along a curve to the left, said curve having a radius of 1249.70 feet, a chord distance of 203.14 feet, a chord bearing of South 51°59'20" West for an arc distance of 203.36 feet;

Thence South 38°14'28" East a distance of 14.69 feet to a point of the East line of said Lot 2;

Thence South 24°43'32" West along the East line of said Lot 2 a distance of 159.93 feet to the Southeast Corner of said Lot 2, same as being the Southeast Corner of said Block 1, Strawberry Lake Addition Section Four;

Thence North 60°50'11" West along the South line of said Addition a distance of 83.33 feet to the common Southwest corner of said Lot 2 and the Southeast corner of said Lot 1;

Thence following the common line between said Lot 1 and said Lot 2 the following courses and distance;

Thence North 29°09'49" East a distance of 57.73 feet to a point of curvature;

Thence Northeasterly along a curve to the left, said curve having a radius of 238.67 feet, a chord distance of 161.37 feet, a chord bearing of North 09°24'17" East for an arc distance of 164.61 feet;

Thence North 10°21'14" West a distance of 44.40 feet;

Thence North 38°58'42" East a distance of 38.46 feet;

Thence North 64°56'24" East a distance of 38.05 feet;

Thence South 70°03'36" East a distance of 24.07 feet;

Thence North 30°17'58" East a distance of 81.01 feet;

Thence North 80°31'09" East a distance of 24.64 feet;

Thence North 38°51'31" East a distance of 33.17 feet to a non-tangent point of curvature;

Thence Southeasterly along a curve to the right, said curve having a radius of 725.50 feet, a chord distance of 37.14 feet, a chord bearing of South 49°08'52" East for an arc distance of 37.15 feet to a point of reverse curvature;

Thence Southeasterly along a curve to the left, said curve having a radius of 20.00 feet, a chord distance of 27.90 feet, a chord bearing of South 88°05'15" East for an arc distance of 30.88 feet;

Thence North 43°51'22" East a distance of 22.41 feet to a point on the Southwesterly Right-of-Way line of Ed Noble Parkway, said point being the common Northeast corner of said Lot 1 and the Northwest corner of said Lot 2;

Thence Southeasterly along said Right-of-Way and along a curve to the right, said curve having a radius of 767.50 feet, a chord distance of 48.07 feet for an arc distance of 48.08 feet to the place or point of beginning.

**N/K/A Lot 2A**

Physical Address: 370 Ed Noble Parkway, Norman, Oklahoma
Tax ID:  150152, 150153 & 150154,

<u>**EXHIBIT B**</u>

**DESCRIPTION OF COLLATERAL PLEDGED BY 5 CROWN FUNDING, LLC**

| | |
|---|---|
| 1. | Item K-5, Stainless Steel Chef's Counter |
| 2. | Item 001, 3 Compartment Walk-in Coolers |
| 3. | Two (2) 100 Gallon A. O. Smith 199.000 BTU High Recovery Hot Water Heaters (#BTH199) from Hajoca |
| 4. | Ansul Fire Supression System from Automatic Fire Control |
| 5. | Lennox Industries Roof Top Package Units, total of nine (9) Units – two segments: Segment #1 and  Segment #2 |
| 6. | Custom Made 39 foot long by 14 foot tall Illuminated Bar Display System EST. |
| 7. | Automatic Door System – Segment 1 and Segment 2 |
| 8. | One (1) 46" LED T.V. with Blu-Ray Player |
| 9. | Iron Masters, four (4) fire screens |
| 10. | Cool Tech 10 Unit (16 Tons+) Self Contained Refrigeration Package System |
| 11. | Captive Aire Hood System, eighty (80) feet of stainless steel hoods with exhaust fans (6) |
| 12. | Captive Air Make-Up Air System |
| 13. | Petersen Chair Company – 100 chairs plus 13 bar stools per invoice |
| 14. | Component Data Rack/Cabling Concepts |
| 15. | JNT Lighting  - all invoices prior to June 3, 2011 |